Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
LaTeigra C. Cahill, NV Bar No. 14352
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Plaintiff,*
*AMA Multimedia LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AMA MULTIMEDIA, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MW MEDIA, a foreign business entity; JOHN DOES 1-25; and ROE CORPORATIONS 26-50,<br><br>Defendants. | Case No. 2:17-cv-3037<br><br>**COMPLAINT**<br><br>**(1) Copyright Infringement – 17 U.S.C. § 101, *et seq.*;**<br>**(2) Contributory Copyright Infringement;**<br>**(3) Vicarious Copyright Infringement;**<br>**(4) Trademark Infringement – 15 U.S.C. § 1114;**<br>**(5) Unfair Competition – 15 U.S.C. § 1125(a)**<br><br>**JURY DEMAND** |

For its Complaint against Defendants MW Media, Doe Defendants 1 through 25, and Roe Corporation Defendants 26-50 (collectively, "Defendants"), Plaintiff AMA Multimedia LLC ("AMA") hereby complains and alleges as follows:

## 1.0   NATURE OF THE ACTION

Plaintiff AMA is a Nevada limited liability company that produces high quality audiovisual works that it distributes online to paid subscribers of its

websites.  In connection with its production and sale of audiovisual works, AMA owns copyright registrations with the U.S. Copyright Office for nearly every audiovisual work that it produces.   AMA additionally owns trademark registrations with the United States Patent and Trademark Office for its brands and zealously and proactively protects its intellectual property.

Defendant MW Media is a business entity formed in Hong Kong with its principal place of business in Poland.  MW Media, along with the Doe and Roe Corporation Defendants, are the owners of the EPorner website, which can be reached through the <eporner.com>, <eprncdn.com> and <epornergay.com> domain names.  The EPorner website operates as a free mega-theater for the copyrighted works of Plaintiff AMA and numerous other American content owners.  When Defendants post videos owned by AMA, they leave Plaintiff's watermark, which contains one of Plaintiff's trademarked logos, on the video and combine it with an EPorner watermark in order to confuse and deceive consumers.  They do this with the full knowledge (or willful blindness) that AMA's trademarks are owned by an American company, thus knowingly infringing upon the trademarks of an American company.

Plaintiff AMA is informed and believes that Defendants upload at least some of Plaintiff's videos onto the EPorner website themselves.  However, they may upload all videos to the site themselves.  To the extent that third parties upload the videos, Defendants actively encourage these third parties to do so.  Defendants did not designate an agent for receipt of take-down notices pursuant to 17 U.S.C. § 512 until after some of the infringing activity forming the basis of this lawsuit occurred and thus are not entitled to the protections that the Digital Millennium Copyright Act (the "DMCA") could have provided with respect to conduct that occurred prior the designation of an agent.

Plaintiff seeks relief from this Court in order to put an end to Defendants' rampant intellectual property infringement and asserts claims against Defendants for copyright infringement, contributory copyright infringement, vicarious copyright infringement, trademark infringement, and unfair competition.

**2.0   JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338, as this case arises under the U.S. Copyright Act and the U.S. Lanham Act.

2.      This Court has personal jurisdiction over Defendant MW Media because it is a foreign corporation with sufficient contacts with the U.S. to render jurisdiction proper in any U.S. court, including the United States District Court for the District of Nevada.  *See* Fed. R. Civ. P. 4(k)(2); 28 U.S.C. § 1391. Defendant MW Media has purposefully availed itself of doing business in the U.S. and is subject to jurisdiction in any U.S. court.  Further, Defendant MW Media has knowingly entered contracts that are governed by U.S. jurisdiction clauses with U.S.-based companies, knowingly targeted U.S. copyrights and trademarks, knowingly infringed upon content produced and distributed in the United States, and knowingly and willfully caused harm to a U.S. resident, with the full knowledge that the brunt of the harm caused by its actions would be felt in the United States.

3.      This Court has personal jurisdiction over Defendants because the claims in this Complaint relate to their maintenance and operation of a website located on the World Wide Web at <eporner.com>, <epornergay.com>, and <eprncdn.com>.  This website is interactive and was fully accessible to residents of this District until Defendants blocked access to residents of Nevada (the

location of this Court and Plaintiff's counsel) after receiving notice of AMA's claims.

4.     Defendants have a large portion of users in the United States.  In fact, more of their users are in the U.S. than any other country.  Additionally, much of the stolen content distributed by Defendants on the World Wide Web originates from the U.S., including Plaintiff's content.

5.     Defendants make a large majority of their revenue from advertising.  Defendants target United States and Nevada residents specifically, by showing them targeted ads based upon their location.  The targeting of ads allows Defendants to optimize the amount of advertising revenue they earn.[1]

6.     Prior to the filing of this lawsuit, Defendants used a U.S.-based DNS company, based in Virginia.   As part of that relationship, Defendants irrevocably consented to the exclusive and personal jurisdiction of the city courts of Reston, the state courts of the State of Virginia, and United States District Courts located in Virginia.

7.     The illegal distribution of Plaintiff's works takes place partially, if not entirely, in the U.S.

8.     When Defendants chose an agent to receive service of process under the DMCA, they selected one in Fort Lauderdale, Florida – thus further engaging in business in the United States.   This also shows Defendants are seeking protection under U.S. law.

---

[1]   Different countries sell for different advertising rates.  The United States sells for some of the highest, if not the highest rates in the world.  Defendant makes more money from the U.S. than any other country, by a significant margin.

9.      Defendants' EPorner website has always had a statement pursuant to 18 U.S.C. § 2257, demonstrating that they have always availed themselves of the protection afforded by US laws.

10.     Prior to this lawsuit, Defendants' terms of use on the EPorner websites stated:

> The Content contained on the Eporner with the exception of User Submissions including but not limited to the text, software, scripts, graphics, music, videos, photos, sounds, interactive features and trademarks, service marks and logos contained therein, are owned by and/or licensed to Eporner, subject to copyright and other intellectual property rights under <u>United States</u>, Canada and foreign laws and international conventions.

Defendants have changed their terms and no longer explicitly seek the protections of US intellectual property laws.

11.     Defendants only offer their website in English.  The United States is the largest and most populous English-speaking country in the world, showing that the Defendants are explicitly and successfully targeting United States residents.[2]  Defendants do not offer the EPorner website in any other language.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) & (c).

## 3.0    THE PARTIES

13.     Plaintiff AMA is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada.  Plaintiff is a producer and distributor of erotic adult entertainment over the Internet.

---

[2]   The United States has approximately 300 million English speakers. The second country with the most English-speaking residents is India, with approximately 125 million English speakers.  It should be noted that Indian-based advertising sells for a fraction of what United States advertising sells for. *See* Wikipedia, List of countries by English-speaking population, <https://en.wikipedia.org/wiki/List_of_countries_by_English-speaking_population> (last accessed December 11, 2017).

14.     AMA owns a series of subscription-based websites that create and distribute adult content to subscribers who pay for its services.   Specifically, AMA's subscribers are issued a login ID and password after providing credit card information and confirming that they are over 18 years of age.   Following issuance of the login ID and password, subscribers are able to access the secure portion of AMA's websites to view adult materials.

15.     AMA owns numerous online properties, the brands of which are protected by common law and federally registered trademarks. In particular, AMA produces adult content under the well-known "Passion-HD" and "Massage Creep" brands, among others.

16.     AMA has federally registered trademark rights in the following marks:

a.   PASSION-HD.COM (registration number 4,190,291).

b.   PASSION-HD (registration number 4,251,457).

c.   PORNPROS (registration number 4,081,017).

d.   PORNPROS (registration number 3,566,875).

e.   PUREMATURE (registration number 4,453,271).

f.    POVD INNOVATIVE. CUTTING EDGE. A NEW PORN EXPERIENCE. (registration number 4,576,025).

g.   TINY4K.COM, (registration number 4,678,642).

h.   FANTASYHD (registration number 4,591,117).

i.    EXOTIC4K.COM YOUNG EXOTIC GIRLS 4K ULTRA-DEF (serial number 86,425,774).

17.     Defendant MW Media is a Hong Kong business entity with its principal place of business in Poland.  MW Media is the corporate name of the EPorner website.

18.     Defendant MW Media and the Doe and Roe Corporation Defendants are a group of individuals and/or entities that operate the EPorner website, accessible through these domain names.

19.     Plaintiff is currently unaware of the actual names and/or identities of the Doe and Roe Corporation Defendants but will further amend this Complaint after those identities are discovered over the course of discovery.

## 4.0   ALLEGATIONS COMMON TO ALL CLAIMS

### 4.1   The Operation of the EPorner Website

20.     MW Media or one of its principals registered the <eporner.com> domain name on or about April 8, 2008.  The current registrar of the domain name is Key-Systems GmbH, a domain name registrar located in Sankt Ingbert, Germany.

21.     Because Defendants are aware that they are using the <eporner.com> domain name to infringe upon the rights of Plaintiff and other content producers, they have utilized a privacy service to hide their identities as registrants of the domain name, specifically Whoisproxy.com, Ltd., which is located in Auckland, New Zealand.

22.     The hosting company used for the <eporner.com> domain name is Leaseweb, which has an office in Manassas, Virginia.

23.     The principals of MW Media registered, respectively, the <eprncdn.com> and <epornergay.com> domain names.  Because Defendants and their principals are aware that those domain names are being used to infringe upon the rights of Plaintiff and other content producers, they use privacy services to hide their identities.

24.     When an Internet user puts the <eporner.com>, <epornergay.com>, or <eprncdn.com> domain names into his Internet browser, he is taken to Defendants' EPorner website, which operates as a

mega-theater displaying the contents of Plaintiff and other content producers free of charge and with no compensation to Plaintiff or other content producers. Before Plaintiff confronted MW Media, the videos on the EPorner website were loaded through the <eprncdn.com> domain name. After it was filed, the <eprncdn.com> domain name was removed.

25.    EPorner's popularity rests entirely on the infringing content found on the site. Virtually all of the profit that Defendants make from the EPorner site is a result of the infringing content found on the site, including content belonging to Plaintiff.

26.    The videos on the EPorner site, including the videos Defendants stole from Plaintiff, contain the watermark of the content owner/producer. In addition, EPorner includes its own watermark in the top left-hand corner of the video, which reads "HD EPorner."

27.    Because Defendants use the EPorner watermark along with Plaintiff's watermarks on the EPorner site, Internet users will be confused and believe that Plaintiff sponsors, endorses, or approves of EPorner's use of its content and trademarks, which it does not.

28.    EPorner operates on the World Wide Web purporting to be a forum for website users to share their own original video content. However, belying its ostensible function as a repository for user-owned and generated content, most of the content on EPorner (and the most valuable content on EPorner) consists of infringing copies of obviously copyrighted works, including those of Plaintiff AMA.

29.    Most video upload sites require their users to create an account, typically by providing (at the very least) an email address.

30.    On EPorner's upload page, it advertises that users have the option to upload anonymously. Therefore, if EPorner's users are uploading infringing

material, EPorner assists them in doing so with minimal fear of being identified by the intellectual property owner.

31.    Upon information and belief, Defendants themselves upload some, if not most, of the infringing content on the EPorner website.  In fact, the site's upload page seems to confirm this when it states "[e]very day we are adding dozens of new porn videos and photos."

32.    The EPorner site displays a still image from within the video on its website.  When an Internet visitor drags his cursor over the image for a specific video, multiple images from within the video are shown sequentially, providing a preview of the video's contents.

33.    Beneath the preview image of each video, the site displays the number of views, the average user rating on a 5-star scale, and the length of the video in minutes and seconds.

34.    The longer a video is, the more views it gets on the EPorner site, as Internet visitors will know that they are full-length movies and not previews. Longer videos are most likely to be infringing.

35.    When an Internet visitor clicks on the preview image, the video begins to play.

36.    Defendants categorize several videos found on EPorner under the terms "Full HD Porn," "60 FPS Porn," or "Full HD," and marks videos that fall under these categories with a special identifier visible on the preview image of a video[3].  Defendants, rather than third-party users of EPorner, add these special identifiers.

---

[3]    Since the filing of this lawsuit, Defendant has dramatically altered their website to include removing this special identifier.  It was not possible for a third party user to place that identifier on a video.

37.   In addition to posting Plaintiff's videos on the EPorner site, Defendants incentivize third parties to display Plaintiffs' copyrighted works as well through the EPorner webmaster program, which encourages third parties to populate their websites with infringing material from the EPorner site.

**4.2   EPorner Has Not Always Been DMCA Complaint**

38.   The EPorner website has always contained a section entitled "DMCA Notice of Copyright Infringement," whereby Defendants state that they have a designated agent to receive takedown requests whose email address is <dmca@eporner.com>.

39.   However, a review of the Service Provider Agents list on the website for the U.S. Copyright Office revealed that EPorner had not designated an agent for receipt of takedown notices, as required by 17 U.S.C. § 512(c)(2) until late December 2015.

40.   Because Defendants had not registered a designated agent with the Copyright Office as required by Section 512(c)(2), they do not qualify for the safe harbor provisions of 17 U.S.C. § 512(c)(1) with regard to the claims asserted herein that accrued before December 2015.

41.   Notably, even though MW Media could have chosen a DMCA agent from any country in the world, it selected one in Fort Lauderdale, Florida – thus further engaging in business in the United States.

42.   EPorner purports to have a repeat infringer policy.  However, it is ambiguous to the point of irrelevance, as it used to simply state "a User's access to EPorner will be terminated if, under appropriate conditions, the User is determined to infringe repeatedly."

43.   Eporner has very recently changed its repeat infringer policy, however, it is still ambiguous, "any user for whose MATERIAL we receive three

good-faith and effective complaints within any contiguous six-month period will have his grant of use of the Websites terminated." (emphasis in original).

44. Upon information and belief, Defendants make no effort to enforce this repeat infringer policy.

45. Additionally, because EPorner accepts "anonymous" uploads that capture very little, if any, identifying information on the site's uploaders, it would be impossible to enforce any reasonable repeat infringer policy.

46. However, Defendants do possess actual, specific knowledge of infringing activity and general knowledge of the infringement occurring on the EPorner site, which they have chosen to ignore so that they might benefit at the expense of intellectual property owners, including AMA.

47. Defendants sell advertising on the EPorner website in the form of traditional website display ads.

48. Defendants receive revenue from the advertisements on the basis of the number of ads displayed, the countries those users originate from, and/or the number of visitors its advertisements direct to the advertisers' websites.

49. Defendants' infringing activity leads to increased Internet traffic on the EPorner site and thus increases advertising revenue – as an increasing volume of Internet traffic increases both the amount of advertisements displayed to users of its service and the rates that Defendants can charge for displaying those advertisements.

50. Defendants knowingly, intentionally, negligently, willfully, or with willful blindness, knows of, causes, or permits copyright infringement to occur on EPorner, while exercising the right and authority to control and end such infringement. Defendants do this for their own financial gain and benefit.

**5.0    CAUSES OF ACTION**

**5.1    First Cause of Action – Copyright Infringement (17 U.S.C. § 501)**

51.    Plaintiff AMA repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

52.    AMA is the owner of at least 80 works – among dozens of others – found to be copied and distributed, without authorization, on Defendants' website, EPorner, which is reached through the <eporner.com>, <eprncdn.com> and <epornergay.com> domain names.

53.    AMA registered each copyright with the U.S. Copyright Office within 90 days of publication and/or before Defendants' infringement occurred.

54.    The number of infringed copyrights – and the volume of infringement – on the EPorner website grows daily, as is Defendants' intention. AMA shall file supplemental updates to this Complaint to document subsequently discovered infringements.

55.    At all times leading to this lawsuit, AMA was the producer and registered owner of the works unlawfully reproduced and distributed by Defendants through EPorner.

56.    Defendants reproduced, reformatted, and distributed AMA's copyrighted works through servers and other hardware that it owned, operated, or controlled.

57.    Defendants infringed upon AMA's copyrights through their reproduction and distribution of AMA's works through EPorner without AMA's approval or authorization.

58.    Defendants knew or should have known that they did not have permission to exploit AMA's works on EPorner and that their actions of copying, displaying, and distributing AMA's works constituted copyright infringement.

59.   Defendants engaged in intentional, knowing, negligent, or willfully blind conduct that demonstrates they engaged actively in the unlawful collection and distribution of AMA's copyrighted works.

60.   Defendants' copyright infringement has increased the appeal of the EPorner website, which increased the visits to Defendants' site and the revenue that they receive from the site.

61.   Defendants' conduct is willful pursuant to the provisions of 17 U.S.C. § 101, *et seq.*  At minimum, Defendants acted with willful blindness and reckless disregard of AMA's registered copyrights.

62.   Under 17 U.S.C. § 504, AMA may recover damages, including ascertainable direct losses and all profits Defendants made by their wrongful conduct.  Alternatively, AMA may collect statutory damages.

63.   As Defendants' infringement is willful, AMA is entitled to statutory damages of $150,000 per infringed work. 17 U.S.C. § 504(c)(2).

**5.2   Second Cause of Action – Contributory Copyright Infringement**

64.   Plaintiff AMA repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

65.   Defendants had actual or constructive knowledge of infringement occurring on EPorner or were willfully blind to such infringement.

66.   Third party users of EPorner committed the infringements, who copied and distributed AMA's works without AMA's authorization.

67.   Defendants induced, caused, or materially contributed to the third-party infringement through the EPorner website, and specifically through certain features of EPorner designed to encourage users to upload copyrighted videos onto the EPorner website.

68.    Defendants additionally encouraged third parties to populate their websites with infringing materials contained on the EPorner site through the EPorner Webmaster program, including Plaintiffs' copyrighted works.

69.    Defendants induced, caused, or materially contributed to the third-party infringement through Defendants' Webmaster program, which was designed to encourage third parties to post Plaintiffs' copyrighted works on their sites.

70.    Defendants received a direct financial benefit from the third-party copyright infringement that it materially contributed to, caused, and induced.

**5.3    Third Claim for Relief – Vicarious Copyright Infringement**

71.    Plaintiff AMA repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

72.    Defendants had specific, or at least general, knowledge of copyright infringement occurring on EPorner.

73.    Defendants had the right and ability to control access to, remove, or disable the infringing materials.

74.    Defendants profited from the infringement through increased Internet traffic and concomitant advertising revenue it realized as a consequence of the infringement.

75.    Because Defendants profited from this infringement, it declined to use its right and ability to delete or disable any and all infringing content.

**5.4    Fourth Claim for Relief – Trademark Infringement (15 U.S.C. § 1114)**

76.    Plaintiff AMA repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

77.    On the EPorner site, Defendants prominently display AMA's federally registered trademarks on various videos in conjunction with EPorner's logo.

78.     Defendants are using Plaintiff's marks in commerce.

79.     Defendants' use of Plaintiff's trademarks constitutes a reproduction, copying, counterfeiting, and colorable imitation of Plaintiff's trademarks in a manner that is likely to cause confusion or mistake or to deceive consumers.

80.     By using Plaintiff's marks on the World Wide Web, Defendants intend to cause confusion, cause mistake, or deceive consumers.

81.     Defendants are using Plaintiff's trademarks in connection with the sale, offering for sale, or advertising of services in a manner that is likely to cause confusion, or to cause mistake, or to deceive consumers as to affiliation, connection, or association with Plaintiff or as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Plaintiff.

82.     Defendants' use of Plaintiff's marks has created a likelihood of confusion among consumers who may falsely believe that Defendants' business or website is associated with Plaintiff or that Plaintiff sponsors or approves of Defendants' services or commercial activities.

83.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### 5.5     Fifth Claim for Relief – Unfair Competition (15 U.S.C. § 1125(a))

84.     Plaintiff AMA repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

85.     Defendants' use in commerce of marks identical and/or confusingly similar to Plaintiff's trademarks in connection with Defendants' services and website constitutes a false designation of origin and/or a false and misleading description or representation of fact, which is likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or

association with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Plaintiff.

86. Defendants' use in commerce of Plaintiff's marks and/or marks confusingly similar to Plaintiff's marks with the knowledge that Plaintiff owns and has used, and continues to use, its trademarks constitutes intentional conduct by Defendants to make false designations of origin and false descriptions about Defendants' services and commercial activities.

87. As a direct and proximate result of such unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**6.0   PRAYER FOR RELIEF**

AMA respectfully requests that the Court hereby:

A. Enter a judgment that Defendants willfully infringed AMA's rights in federally registered copyrights pursuant to 17 U.S.C. § 501 through direct, contributory, and vicarious acts;

B. Issue declaratory and injunctive relief against Defendants, their agents, representatives, employees, attorneys, successors, and assigns, and all others acting with or on behalf of Defendants, and further to enjoin and restrain Defendants from copying, posting, or making any other infringing use or distribution of AMA's audiovisual works, pursuant to 17 U.S.C. § 502;

C. Issue injunctive and declaratory relief against Defendants, their agents, representatives, employees, attorneys, successors, and assigns, and all others acting with or on behalf of Defendants, enjoining and restraining them from engaging in further acts of copyright infringement; and if they are unable to comply, the Court should issue an order shutting down EPorner completely;

D. Issue injunctive and declaratory relief against Defendants, their agents, representatives, employees, attorneys, successors, and assigns, and all

others acting with or on behalf of Defendants, enjoining and restraining them from engaging in further acts of trademark infringement and unfair competition; and if they are unable to comply, the Court should issue an order shutting down EPorner completely;

E.    Enter an order of impoundment pursuant to 17 U.S.C. §§ 503 & 509(a) impounding all infringing digital copies of Plaintiff's audiovisual works and other materials, which are in Defendants' possession or under its control in any form;

F.    Enter an order enjoining Defendants from disposition of any domain names registered to it, or other property, until full and final settlement or payment of any and all money damage judgments;

G.    Enter an order requiring a full and complete accounting of all amounts due and owed to AMA as a result of Defendants' illegal or improper activity, whether criminal or civil in nature;

H.    Enter an order directing Defendants to pay AMA statutory damages of maximum enhanced statutory damages of $150,000 per infringed work pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful infringement of AMA's copyrights;

I.    Enter an order directing Defendants to pay AMA both the costs of the action and reasonable attorneys' fees incurred by it in prosecuting this action under 17 U.S.C. § 505;

J.    Enter an order directing Defendants to pay pre- and post-judgment interest at the highest legal rate; and

K.    Grant AMA whatever further relief in law or in equity that the Court deems appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby respectfully demands a jury trial for all issues triable by jury.


Dated: December 11, 2017.          Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

<u>/s/ Ronald D. Green</u>
Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
LaTeigra C. Cahill, NV Bar No. 14352
4035 S. El Capitan Way
Las Vegas, NV 89147

*Attorneys for Plaintiff,*
*AMA Multimedia, LLC*