Ronald D. Green, NV Bar No. 7360
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
AMA Multimedia LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AMA MULTIMEDIA, LLC,<br>a Nevada limited liability company,<br>Plaintiff,<br>vs.<br>MACIEJ MADON, a foreign citizen;<br>JOHN DOES 1-25; and<br>ROE CORPORATIONS 26-50,<br>Defendants. | Case No. 2:17-cv-03037-GMN-EJY<br><br>**OPPOSITION TO DEFENDANT MACIEJ MADON'S MOTION TO SET ASIDE DEFAULT** |

Plaintiff AMA Multimedia, LLC ("AMA") hereby opposes Defendant Maciej Madon's Motion to Set Aside Default (ECF No. 33). This Opposition is made pursuant to Fed. R. Civ. P. 55 and is based upon the papers and pleadings on file in the action, the attached memorandum of points and authorities, the exhibits attached hereto, and any oral argument permitted by this Court.

## 1.0 INTRODUCTION AND FACTUAL BACKGROUND

### 1.1 Nature of the Case

Plaintiff AMA is a Nevada limited liability company that produces high quality audiovisual works that it distributes online to paid subscribers of its websites. It owns copyright and trademark registrations protecting that work and zealously protects its intellectual property from infringers.

Defendant Maciej Madon operates a website named ePorner that exists to infringe the intellectual property rights of Plaintiff and other content producers. Specifically, ePorner operates as a free mega-theater for the copyrighted works for Plaintiff AMA and other American content producers. As such, Plaintiff AMA filed suit against Defendant Madon in this Court.



RANDAZZA | LEGAL GROUP

Defendant Madon, a resident of Poland, was properly served through the Hague Convention in October of 2019. He opted not to participate in this lawsuit or respond to Plaintiff's Amended Complaint. As such, Plaintiff AMA applied for, and received, an entry of Default against Madon in February of 2020. Following the issuance of the Default, Madon decided that he did not wish to have judgment entered against him and moved this Court to set it aside.

**1.2 Service via The Hague Convention**

Plaintiff AMA filed this case on December 17, 2017, naming "MW Media, a foreign business entity" as Defendant. (*See* Complaint, ECF No. 1.) Shortly after filing, Defendant began the process of serving Defendant in Poland as authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention") as permitted by Rules 4(f)(1) and 4(h)(2) of the Federal Rules of Civil Procedure. (*See* Declaration of Trey Rothell ("Rothell Decl."), at ¶ 3.) When this Court inquired regarding the status of service upon Defendant (ECF No. 4), AMA responded by confirming that Defendant was foreign; that that it was serving via the Hague Convention. (*See* ECF No. 5, at 2.) AMA asserted that it would keep the Court informed regarding its attempts to serve, and it did so until it confirmed that service was effected.

While attempting service, Plaintiff learned that MW Media was a partnership with no legal personality and no ability to be sued in Poland. (*See* Rothell Decl., at ¶ 7.) MW Media is akin to a sole proprietorship[1] and is not a legal entity. As such, on April 12, 2019, AMA filed a Motion to Substitute Parties (ECF No. 10), asking the Court to substitute Maciej Madon, a partner with MW Media, for the partnership as the named Defendant. This Court granted that Motion on May 2, 2019 and substituted Madon as the proper Defendant in the case. (*See* ECF No. 11.)

Shortly thereafter, on May 7, 2019, AMA filed an Amended Complaint (ECF No. 12) substituting Maciej Madon for MW Media. On May 21, 2019, AMA filed an update with the Court regarding its renewed attempts to serve Mr. Madon pursuant to the Hague Convention (ECF No. 15).

[1] MW Media is a Polish "civil law" partnership which is akin to a sole proprietorship, however it allows multiple natural persons to organize under it. The individual partners form the so-called partnership.



RANDAZZA | LEGAL GROUP

On August 19, 2019, AMA updated the Court once again regarding service of Madon under the Hague Convention (ECF No. 19). Specifically, AMA confirmed that it had the Summons and Complaint translated into Polish and had transmitted a Request for Service Abroad of Judicial or Extrajudicial Documents upon the Polish Central Authority. At that point, AMA was simply waiting for proof of service from the Polish Central Authority.

On September 26, 2019, AMA filed a Motion for Order Setting Aside Deadline to Serve Defendant Pursuant to Rule 4(m), or Alternatively, for Extension of Time to Serve (ECF No. 24). In that document, AMA represented that it anticipated that "proof of service [was] likely imminent" but that it was "unable to ascertain the current status of the process because service [was] in the hands of Poland's Ministry of Justice." (*Id.*, at 2-3.) In its Order (ECF No. 25), this Court extended the time to serve Mr. Madon until November 5, 2019.

On November 5, 2019, AMA filed another Motion to extend the time for service (ECF No. 27). In that Motion, it noted that it had asked the Polish Central Authority for an update on the status of service several times but had not yet received one. (*See id.* at 2.) Plaintiff noted that it was unable to control the speed of service by the Polish Central Authority and asked that the Court extend the time to serve until February 3, 2020. (*See id.* at 2.) On November 6, 2019, the Court granted Plaintiff's request (ECF No. 28).

On January 20, 2020, Plaintiff AMA received word from the Polish Central Authority that Defendant Madon had been served on October 30, 2019. (*See* ECF No. 29, at 2.) On the same day, AMA alerted the Court that service had been executed. (*See id.*) AMA noted that it was willing to request default against Madon because three months had passed and Madon had not made an appearance. (*See id.* at 3.) However, it was also willing to wait to receive a Certificate of Service from the Polish Central Authority and asked that the Court give it until March 3, 2020 to obtain one. (*See id.* at 3-4.).

On February 4, 2020, Plaintiff received a copy of the executed Certificate of Service and filed it with the Court (ECF No. 30). On February 10, 2020, AMA requested that the Court enter default against Madon (ECF No. 31). This Court defaulted Madon on February 11, 2020 (ECF No. 32).



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

**1.3 Compliance with the Hague Convention**

AMA fully complied with the Hague Convention's requirements for service in Poland. It translated the Summons and Complaint into Polish and submitted the original and translated documents to the Polish Central Authority, which forwarded the documents to a court of competent jurisdiction to serve Mr. Madon. (*See* Hague Conference on Private International Law – Poland, <hcch.net/en/states/authorities/details3/?aid=268>, attached to the Rothell Decl. as **Exhibit 1**.)

On October 30, 2019, the Polish court served Mr. Madon at the address Mr. Madon provided to the Polish Central Registration and Information on Business ("CEIDG"). That address remains current on the CEIDG website as of this filing. (*See* CEIDG Information on Maciej Madon, accessed on June 5, 2019 and on June 9, 2020, attached to the Rothell Decl. as **Exhibit 2**.)

**1.4 Defendant's Awareness of this Lawsuit**

Defendant Madon cannot reasonably claim that he was unaware of this lawsuit and did not receive notice of it. In fact, he know about this case well before he was served. AMA filed a lawsuit against Madon's business partner, Marcin Wanat, in the U.S. District Court for the District of Arizona on August 24, 2015. In January of 2018, AMA appealed an incorrectly decided jurisdictional issue in that case to the U.S. Court of Appeals for the Ninth Circuit. On January 17, 2018, AMA filed a Mediation Questionnaire in that case disclosing this proceeding as a related proceeding to the Arizona case. (*See* Mediation Questionnaire, attached to the Rothell Decl. as **Exhibit 3**.) That Mediation Questionnaire was served upon Jakub Medrala, who acted as counsel for Marcin Wanat in the Arizona case and is serving as counsel for Mr. Wanat in this case. Mr. Medrala shared the existence of this litigation with Mr. Madon and Mr. Wanat over two years ago.

In fact, by email dated March 24, 2020, Mr. Medrala contacted AMA's counsel, stating that he had previously "attempted to reach out to Mr. Madon to see if he would require representation in this case." (*See* March 24, 2020 Email, attached to the Rothell Decl. as **Exhibit 4**.) However, Mr. Medrala stated that Mr. Madon had not responded to Mr. Medrala's solicitation "until now." (*Id.*) While Mr. Medrala did not specify when he first reached out to Mr. Madon, the first sentence of his email

made clear that Defendant Madon and Mr. Medrala had been following the case for some time. (*See id.*)

Finally, Mr. Madon claims that he was not served and that the Polish court served the wrong building. However, while the Motion argues that Madon does not reside at "ul Laczna 9, Oswiecim," Defendant Madon cutely testifies that he does not reside at "ul Laczna 3, Oswiecim." (Motion, at 6; Madon Decl. (ECF No. 33-1), at ¶ 5.) As noted, at the time of service and to this day, Madon lists "ul Laczna 9, Oswiecam" as his address with the CEIDG. Madon was served at the location where he does business according to information that he provided to the Polish government.

**2.0 LEGAL ARGUMENT**

Pursuant to Fed. R. Civ. P. 55(c), this Court should not set aside an entry of default if the defaulted defendant has not demonstrated good cause. This Court looks at three factors to determine whether "good cause" exists to set a default aside: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether the plaintiff would be prejudiced if the default was set aside. *See Trs. of the Bricklayers v. G&J Flooring, Inc.*, 2011 U.S. Dist. LEXIS 119523, at *2-3 (D. Nev. Oct. 14, 2011) (*citing TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001)). The burden is on the party seeking to set the default aside. *See id.*

These factors are "disjunctive, which means a motion to set aside default or vacate default judgment may be denied based on any one of the factors not weighing in favor of the defaulting party." *Trs. of the Bricklayers*, 2011 U.S. Dist. LEXIS 119523, at *3; *see United States v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). In other words, if one of the factors does not resolve in Defendant's favor, this Court would not need to examine the other factors. *Trs. of the Bricklayers*, 2011 U.S. Dist. LEXIS 119523, at *3 (*citing Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).

At the outset, it should be noted that Defendant Madon misrepresents the standard in his Motion. Specifically, Mr. Madon states that the "test is disjunctive, and proof of any of the three factors may justify setting aside the default." (Motion, at 7.) To support that proposition, he miscites *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011). That case actually comports

RANDAZZA | LEGAL GROUP

with the *Meadows* case cited above and held that district courts are "free to deny [relief] if any of the three factors [are] true." *Id.* The Court should disregard the standard cited in Defendant's Motion.

Here, at the very least, Defendant Madon's culpable conduct led to default. For that reason alone, his Motion should be denied. However, he additionally fails to demonstrate any real defenses to the lawsuit, and Plaintiff AMA would be prejudiced if the default was set aside. Mr. Madon's Motion should be denied.

**2.1 Defendant Madon Was Culpable**

The first disjunctive factor the Court needs to consider is whether Madon engaged in "culpable conduct." A party engages in culpable conduct when he has actual or constructive knowledge of the lawsuit and intentionally fails to respond to the complaint. *See U.S. v. Signed Personal Check No. 730 of Yubran S. (Mesle)*, 615 F.3d 1085, 1092 (9th Cir. 2010); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2011). "[C]onstructive knowledge [is] [k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Black's Law Dictionary* (10th Edition 2014). A defendant intentionally fails to answer where such failure was willful, deliberate, or in bad faith. *See id.*

Here, Defendant Madon had either actual or constructive knowledge of this lawsuit. It was disclosed to his business partner and his lawyer over two years ago in the Ninth Circuit Mediation Questionnaire discussed herein, and he was aware that his business partner had been sued in Arizona federal court. It strains credulity to believe that neither his business partner nor his counsel informed him of the lawsuit. Moreover, his attorney admitted via email that he had been monitoring the case, that he had solicited Madon to be his client, and that Madon did not desire to retain him until after the default had entered.

Madon should also be deemed to have, at the very least, constructive notice because a Polish court served the documents upon an address that he provided to the Polish government as the location where he does business. As noted, to this day, that address remains the location where he does business according to the business records of the Polish government. Finally, Madon does not even deny that he resides or does business at the address he provided to the Polish government. Rather, in



RANDAZZA | LEGAL GROUP

Case 2:17-cv-03037-GMN-EJY Document 34 Filed 06/10/20 Page 7 of 12

his declaration, he testified that he did not reside at a different address.[2] AMA agrees with this contention, yet Madon's attempt to mislead the Court should not be ignored or rewarded.

Based upon all evidence before the Court, Madon had actual notice of this lawsuit prior to default being entered against him. However, at the very least, he had constructive notice and opted not to respond until he feared that default judgment might be entered against him. Based upon the disjunctive test that the Court should apply, his Motion should be denied based upon this factor alone.

**2.2 Madon Does Not Have Meritorious Defenses**

Given that Madon has clear culpable conduct regarding his failure to respond to the Amended Complaint, the Court does not need to consider the remaining two factors. However, if it decides to do so, Madon does not demonstrate that he possesses meritorious defenses to AMA's claims. A party in default "is required to make some showing of a meritorious defense as a prerequisite to vacating an entry of default." *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). In order to do so, the defendant must "present the district court with specific facts that would constitute a defense." *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

Madon brings three purported "defenses" to the Court's attention: (1) res judicata and collateral estoppel, given the dismissal of the Arizona case against his business partner on personal jurisdiction grounds; (2) statute of limitations; and (3) lack of personal jurisdiction. None of these defenses are legitimate, and the Motion should be denied.

**2.2.1 Res Judicata**

First, the doctrine of res judicata or claim preclusion does not apply at all in this case. As noted, AMA did file a copyright claim against Madon's business partner in the U.S. District Court for the District of Arizona, and the Arizona court did dismiss his partner based upon a faulty lack of personal jurisdiction analysis that has been appealed to the U.S. Court of Appeals for the Ninth Circuit. However, Defendant Madon cannot claim that res judicata prohibits AMA from suing him in this

---

[2] The Court should cross reference the address in the motion, with the address in Madon's declaration. They are different.



RANDAZZA | LEGAL GROUP

Court. It is well-settled that "a dismissal for want of personal jurisdiction is *not* a judgment on the merits for purpose of res judicata." *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016); *see also Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 805 (1985); Restatement (Second) of Judgments § 20(1) (1982). Defendant cannot rely upon res judicata and has no meritorious defenses based upon the doctrine.

#### 2.2.2 Collateral Estoppel

Defendant Madon cannot rely upon the doctrine of collateral estoppel or issue preclusion as a defense in this case either. Federal law governs the collateral estoppel effect of a case decided by a federal court. *See Clark v. Columbia/HCA Info. Servs.*, 25 P.3d 215, 224 (Nev. 2001). In order for the collateral estoppel doctrine to apply, the defendant must show that: (1) the parties to the prior action are "identical to, or in privity with, the parties in the current action"; (2) the ruling in the prior action was "on the merits and final"; and (3) the issues in the two actions are identical. *Id.* Importantly, "a dismissal without prejudice is not a final adjudication on the merits." *Id.*

Madon's collateral estoppel arguments fail because the Arizona court's dismissal of his business partner was without prejudice. (*See* Motion, *Exhibit D* (ECF No. 33-6).) Therefore, he cannot rely upon it in this Court.

Moreover, Madon claims in his Motion that he is in privity with his business partner. (*See* Motion, at 10, 11.) He makes no effort to provide any evidence of privity, which should cause this Court to disregard his claim. However, his partner's conduct in the Arizona action demonstrates that he is not in privity with Madon.

In Ninth Circuit courts, "privity exists when there is a 'substantial identity' between parties, that is, when there is a sufficient commonality of interest." *In re Gottheiner*, 703 F.2d 1136, 1139-40 (9th Cir. 1983). During jurisdictional discovery in the Arizona matter, Madon's business partner refused to provide information regarding the other operators of the ePorner website, asserting that doing so "would expose him to civil and criminal liability under Polish law." (Marcin Wanat's Responses to First Set of Requests for Production in Case No. 2:15-cv-01674, attached to the Rothell Decl. as **Exhibit 5**, at Responses No. 3, 15, 16, 28.) If Madon was in privity with his alleged business



RANDAZZA | LEGAL GROUP

partner, he would be able to provide basic information about them, including their identities, without fear of criminal and civil liability. Collateral estoppel is not a meritorious defense to AMA's claims against Mr. Madon. If anything, Madon should be estopped from taking a new, convenient, and inconsistent position.

Finally, the issues are not the same. The parties engaged in jurisdictional discovery in the Arizona action, which was filed in 2015. Wanat, Madon's business partner, refused to respond to the vast majority of AMA's written discovery, alleging that he would be civilly and criminally liable under Polish privacy law that was in effect when the case was filed – the Polish Personal Data Protection Act of 19th August 1997 (the "PDP"). The Arizona court incorrectly held that the PDP protected Wanat from participating in discovery. That case remains on appeal with the Ninth Circuit.

However, if this case were to enter jurisdictional discovery, the PDP is no longer applicable and has been supplanted by EU Regulation 2016/679, the General Data Protection Regulation ("GDPR"), which became effective on May 25, 2018. In fact, in the appeal, the Ninth Circuit recognized that the GDPR had supplanted and replaced the PDP and requested additional briefing regarding the GDPR. (*See* Order Requesting Supplemental Briefing, attached to the Rothell Decl. as **Exhibit 6**.) Defendant cannot meet any of the elements that would permit him to rely upon collateral estoppel as a defense to Plaintiff's claims.

**2.2.3 Statute of Limitations**

Without argument, Madon asserts that he has a meritorious defense that "most, if not all, of AMA's infringement claims concerning the period before December 2015 … will be barred by the three-year statute of limitations contained in 17 U.S.C. § 507(c)." (Motion, at 11.) However, Plaintiff AMA filed this lawsuit in 2017, before any statute of limitations would have run. Moreover, as Madon acknowledges, AMA's claims largely arose after December 2015.

**2.2.4 Lack of Personal Jurisdiction**

Mr. Madon makes several arguments regarding why he does not believe that the Court has jurisdiction. (*See* Motion, at 9.) None of these arguments are supported by anything but his declaration, which already contains one provable misstatement regarding the service address. The



RANDAZZA | LEGAL GROUP

Case 2:17-cv-03037-GMN-EJY Document 34 Filed 06/10/20 Page 10 of 12

RANDAZZA | LEGAL GROUP

Court should disregard these statements, and even if it does not, he has clearly engaged in the culpable conduct required to deny his Motion.

**2.3 AMA Would Be Prejudiced**

Finally, AMA would be prejudiced if the Court sets aside Madon's Default. In determining this factor, the Court must ask "whether the plaintiff's ability to pursue [its] claim will be hindered." *TCI Gropu Life Ins. Plan*, 244 F.3d at 701 (*quoting Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). Prejudice arises "when tangible harm results, such as loss of evidence, increased difficulties in discovery, or greater opportunity for fraud or collusion." *Eads v. Holland Am. Line, Inc.*, 2008 U.S. Dist. LEXIS 7745, at *3 (W.D. Wash. Jan 18, 2008) (*citing Thompson v. Am. Home Assurance*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

Here, AMA would be prejudiced because Madon knowingly failed to participate in the litigation until he was defaulted and has provided no assurances that he would participate going forward. Moreover, he deliberately misidentified the service address in his declaration in an attempt to both argue that he was not properly served and to prevent Plaintiff and this Court from ascertaining his correct whereabouts. *See Valvanis v. Milgroom*, 2008 U.S. Dist. LEXIS 15067, at *7 (D. Haw. Feb. 27, 2008) (denying a motion to set aside due to defendant's refusal to provide an accurate address). Madon's Motion should be denied.

Furthermore, Defendant Madon continues to this day to infringe AMA's copyrights and trademarks. He most likely knew of this lawsuit for over a year before appearing, and instead of trying to defend himself he took advantage of the lengthy service of process procedures under the Hague Convention to continue to profit off of AMA's intellectual property with impunity. For example, to this day, the ePorner web site displays AMA's full length videos, featuring AMA's distinctive watermark, without authorization from AMA. (*See* Rothell Decl. at ¶ 17 & **Exhibit 7**.) AMA did everything it could to comply with the Hague Convention to properly effect service on Madon, but Madon took advantage of this for his own monetary benefit. He will continue to do so throughout this suit, and delays caused by setting aside the default would be prejudicial to AMA.

Case 2:17-cv-03037-GMN-EJY Document 34 Filed 06/10/20 Page 11 of 12

RANDAZZA | LEGAL GROUP

**3.0 CONCLUSION**

Based upon the foregoing, Plaintiff AMA respectfully requests that Madon's Motion be denied.

Dated: June 10, 2020.

Respectfully submitted,

/s/ Ronald D. Green
Ronald D. Green, NV Bar No. 7360
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

Attorneys for Plaintiff
AMA Multimedia, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Employee,
Randazza Legal Group, PLLC

RANDAZZA | LEGAL GROUP