UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMA MULTIMEDIA, LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>MACIEJ MADON, a foreign citizen; JOHN DOES 1-25; and ROE CORPORATIONS 26-50,<br><br>    Defendants. | Case No.: 2:17-cv-03037-GMN-EJY<br><br>**ORDER** |

Presently before the Court is Defendant Maciej Madon's ("Madon") Motion to Set Aside Default. ECF No. 33. The Court has considered Defendant's Motion, Plaintiff AMA Multimedia, LLC's ("AMA") Opposition to Defendant's Motion (ECF No. 34), and Madon's Reply. ECF No. 36. The Court finds as follows.

**I.     BACKGROUND**

This is a copyright infringement, trademark infringement, and unfair competition action filed by AMA, a Nevada limited liability company, against Madon, one of two partners in MW Media, S.C. ("MW Media"), a Polish civil law partnership that owns and operates ePorner.com. AMA produces and distributes adult entertainment over the Internet.

    **1.     The Arizona Action**

On August 24, 2015, AMA filed a lawsuit in the United States District Court for the District of Arizona, Case No. 2:15-cv-01674-PHX-ROS (the "Arizona Action"), against Madon, his business partner Marcin Wanat ("Wanat"), and MW Media based on the same claims that are before this Court. On September 29, 2017, after two years of litigation and jurisdictional discovery involving the appointment of a Special Master, the court dismissed the Arizona Action as to Wanat for lack of personal jurisdiction. The Arizona district court ordered Plaintiff to file a status report indicating how it planned to proceed against the remaining defendants Madon and MW Media.

On October 13, 2017, Plaintiff filed a Status Report advising the Arizona court of its intention to proceed with its claims against Madon and MW Media. AMA expressed its belief that the court's findings on personal jurisdiction as to Wanat did not apply to the other defendants. AMA confirmed it would "seek additional discovery, make new arguments as to personal jurisdiction, and expand upon prior arguments" as to MW Media and Madon. With regard to Madon, AMA claimed neither it "nor the Court know[s] whether he has more significant ties to the United States than Wanat."

On October 17, 2017, the Arizona district court ordered Plaintiff to complete service of process on MW Media and Madon by December 1, 2017, simultaneously directing the "Clerk of Court [to] enter a judgment of dismissal without prejudice if Plaintiff" did not do so by that date. On December 11, 2017, the Arizona district court dismissed Plaintiff's action against MW Media and Madon without prejudice because service was not perfected.

**2.  The Nevada Action**

On the same day the Arizona Action was dismissed, AMA filed its Complaint in this Court. ECF No. 1 (the "Nevada Action"). On March 21, 2018, this Court issued a Notice of Intent to Dismiss the action pursuant to Fed. R. Civ. P. 4(m) because service had not been perfected on MW Media. ECF No. 4. On April 2, 2018, Plaintiff responded to the Notice, stating it was diligently attempting to effect service on MW Media in accordance with the Hague Service Convention. ECF No. 5.

On April 12, 2019, Plaintiff filed its Motion to Substitute Madon as a defendant in place of MW Media explaining that a party "cannot . . . sue a partnership under Polish law, and instead must take action against [the partnership's] members." On May 2, 2019, the Court granted Plaintiff's substitution request. On May 7, 2019, AMA filed its Amended Complaint against Madon only (ECF No. 12), and a summons was issued three days later.

On September 5, 2019, the Court issued a Notice of Intent to Dismiss this action because service had not been perfected on Madon. In response, Plaintiff filed a Motion for Order Setting Aside Deadline to Serve Defendant Pursuant to Rule 4(m), or, Alternatively, for Extension of Time to Serve. The Court granted AMA's Motion and extended the time within which Plaintiff could file proof of service on Madon to February 3, 2020.

On February 4, 2020, Plaintiff submitted its proof of service certifying that the Amended Complaint, Civil Cover Sheet, and summons were served on "Zbigniew Halat," an "adult household member" of Madon, at an address listed as "ul. Łączna 9" in accordance with the Hague Service Convention. ECF No. 30 at 2. The proof of service further certifies that the documents were served on October 30, 2019. *Id*. at 5.

Having received no response to the Amended Complaint, Plaintiff filed its Motion for Entry of Default Against Madon on February 10, 2020. ECF No. 31. The next day, the Clerk of Court entered default. ECF No. 32.

On May 27, 2020, Madon filed the present Motion to Set Aside Default. ECF No. 33. In the event the Motion is granted, Defendant requests a period of twenty days to respond to Plaintiff's Amended Complaint. Madon also asks the Court to take judicial notice of his attached Exhibits (ECF Nos. 33-3 through 33-6), all of which are documents filed in the Arizona Action.[1] ECF No. 33 at 4 n.1; *see also* the Arizona Action, Case No. 2:15-cv-01674-PHX-ROS.

**II.   DISCUSSION**

    **1.   Setting Aside an Entry of Default for Good Cause**

Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause[.]" When determining whether good cause exists, a court considers three factors: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant [lacks] a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (internal citations omitted). These factors, which courts consistently refer to as the "*Falk* factors," are disjunctive. *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir.

---

[1] Federal Rule of Evidence ("Fed. R. Evid.") 201 provides for judicial notice of adjudicative facts. Pursuant to Fed. R. Evid. 201(b)(2), a presiding court may "judicially notice a fact that is not subject to reasonable dispute [when] it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As explained *in Clark Cnty. Dep't of Family Servs. v. Watkins*, "[j]udicial notice is properly taken of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." Case No. 2:17-cv-00354-GMN-PAL, 2017 WL 1243527, at *1 (D. Nev. Feb. 24, 2017) (internal citation omitted). A court is authorized to "take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Defendant correctly states that "[a]ll of AMA's claims against Madon [in the Nevada Action] stem from the same allegations that were raised against his business partner Wanat in the [Arizona] Action[.]" ECF No. 33 at 9. Exhibits A through D (ECF Nos. 33-3 through 33-6, respectively), each of which is a pleading or court order in the Arizona Action, are therefore directly related to the matters at issue. Accordingly, the Court grants Defendant's request for judicial notice.

3

2011). This means finding any one of these factors is true constitutes sufficient reason for the district court to refuse to set aside the default. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("*Mesle*"). However, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits" with doubts resolved in favor of setting aside the default. *Falk*, 739 F.2d at 463 (internal citation omitted); *see also Schwab v. Bullock's, Inc.*, 508 F.2d 353, 356 (9th Cir. 1974). "Absent an abuse of discretion, there is no error in setting aside a default where the judge finds good cause to do so." *Curry v. Jensen*, 523 F.2d 387, 388 (9th Cir. 1975) (internal citation omitted). "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) (internal citation omitted). With the above in mind, the Court examines each of the *Falk* factors.

      i.  *Plaintiff would not be prejudiced if default were set aside*.

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). "[T]the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id*. at 701 (internal citation and quotation marks omitted). In contrast, "merely being forced to litigate on the merits cannot be considered prejudicial . . . . For had there been no default, the plaintiff would of course have had to litigate the merits of the case[.]" *Id*.

Plaintiff argues it would be prejudiced if the default were set aside because Madon has not provided any assurance he will participate in this matter going forward and, instead, continues to infringe on AMA's copyrights and trademarks. ECF No. 34 at 10. AMA's concerns are not well taken. Madon demonstrates an intent to participate in this action by filing his Motion to Set Aside Default; moreover, resolving this matter on the merits may also result in a benefit to Plaintiff as a decision in its favor would preclude Defendant from violating its intellectual property. In sum, AMA fails to argue or demonstrate that it will suffer any "tangible harm" if the default is set aside. *TCI Grp. Life Ins. Plan*, 244 F.3d at 701.

4

        *ii.*     *Defendant presents at least one meritorious defense.*

"A party in default . . . is required to make some showing of a meritorious defense as a prerequisite to vacating an entry of default." *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) (internal citations omitted). The defaulting party's burden is "minimal"; indeed, "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense[.]" *Mesle*, 615 F.3d at 1094 (internal citation omitted). "A meritorious defense is one which, if proven at trial, will bar plaintiff's recovery." *Aristocrat Techs., Inc. v. High Impact Design & Ent.*, 642 F. Supp. 2d 1228, 1233 (D. Nev. 2009) (internal citation and quotation marks omitted). "[M]ere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense are, however, insufficient to justify upsetting the underlying judgment." *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988) (internal citation and quotation marks omitted).

Madon raises four defenses: (1) *res judicata*; (2) collateral estoppel based on dismissal of the Arizona Action against his business partner Wanat on personal jurisdiction grounds; (3) statute of limitations; and, (4) lack of personal jurisdiction. ECF No. 33 at 8-11. Reviewing the factual allegations presented and treating them as true for purposes of this Order (*Mesle*, 615 F.3d at 1094), Madon presents at least one meritorious defense to AMA's claims for the reasons below. Thus, this *Falk* factor weighs in favor of setting aside the Clerk's entry of default.

        a.     <u>*Res judicata*</u>

*Res judicata* does not apply to this case. Claim preclusion under the doctrine of *res judicata* applies when "a final judgment on the merits bars further claims by the same parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979) (internal citations omitted). It is well-settled law that "a dismissal for want of personal jurisdiction is not a judgment on the merits for the purpose of res judicata." *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (internal alteration, citations, and quotation marks omitted). Nevertheless, Defendant claims *res judicata* bars this case from proceeding because the Arizona Action was dismissed as to Wanat for lack of personal jurisdiction. ECF No. 33 at 10. This

is precisely the sort of argument that the Ninth Circuit rejects. *Ruiz*, 824 F.3d at 1164. Accordingly, Madon's *res judicata* defense has no merit.

### b. Collateral estoppel

Collateral estoppel bars relitigation of issues of fact or law that have been "actually litigated and necessarily decided in a prior proceeding." *Robi v. The Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (internal citation and quotation marks omitted). Where a federal court decided the earlier case, federal law controls the collateral estoppel analysis. *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996). The Ninth Circuit relies on a three-step test to determine whether collateral estoppel applies:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Id*. (internal citation omitted). Significantly, collateral estoppel can apply to a dismissal without prejudice only if the determination being accorded preclusive effect was essential to the judgment of dismissal. *Deutsch v. Flannery*, 823 F.2d 1361, 1364 (9th Cir. 1987).

Madon claims AMA is collaterally estopped from litigating whether this Court can exercise personal jurisdiction over him because the Arizona district court dismissed his business partner, Wanat, without prejudice for lack of personal jurisdiction. ECF No. 33 at 11. The Ninth Circuit affirmed the Arizona district court's dismissal after Defendant's Motion to Set Aside Default was fully briefed in this Court. *AMA Multimedia, LLC v. Wanat*, No. 18-15051, 2020 WL 4745032 (9th Cir. Aug. 17, 2020). The second and third requirements of the collateral estoppel test are therefore satisfied because AMA actually litigated the personal jurisdiction issue before the Arizona district court and the Ninth Circuit, which affirmed the dismissal. ECF No. 33-3 at 20. Accordingly, the Court addresses only whether the issue of is personal jurisdiction over Madon in the Nevada Action is identical to whether there was personal jurisdiction over Wanat in the Arizona Action.

To this end, on appeal, the Ninth Circuit noted that the parties did not dispute satisfaction of the first two requirements of the "federal long-arm statute," Fed. R. Civ. P. 4(k)(2), which permits the exercise of personal jurisdiction over nonresident defendants. *AMA Multimedia, LLC*, 2020 WL

4745032, at *5. That is, AMA and Wanat agreed that the claims asserted against Wanat arose under federal law and that Wanat was not subject to the personal jurisdiction of any state court of general jurisdiction. *Id*. Therefore, the court focused its analysis on whether exercising personal jurisdiction over Wanat comported with the third and final due process requirement of the federal long-arm statute. *Id*. The due process analysis involves "a three-part inquiry to determine whether a nonresident defendant has such 'minimum contacts' with the forum to warrant the court's exercise of specific jurisdiction[.] . . . The first prong [of the inquiry] requires AMA to show that [a defendant] either purposefully direct[ed] his activities at the United States or purposefully avail[ed] himself of the forum."[2] *Id*. (internal citation and quotation marks omitted). In turn, the "effects test" used to determine whether a nonresident defendant purposefully directed his activities towards the forum requires the plaintiff to show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. (internal citation omitted).

The Ninth Circuit found Wanat committed an intentional act for purposes of the effects test because, *inter alia*, he was "one of the partners of MW Media[.] . . . *Each* of Wanat's actions were [sic] intentional acts which satisfy this first prong." *Id*. at *6 (internal citations omitted) (emphasis added). In contrast, AMA failed to evidence the other two elements of the effects test because the "United States was not the focal point of the website and of the harm suffered." *Id*. at *9 (internal citation and quotation marks omitted). The court reasoned as such because, in contrast to AMA's assertions, "ePorner lacks a forum-specific focus," "the popularity or volume of U.S.-generated adult content does not show that Wanat expressly aimed the site at the U.S. market," "ePorner uses geo-located advertisements, which tailor advertisements based on the perceived location of the viewer," and ePorner's Terms of Service as well as its use of an American Domain Name System provider did not evince Wanat's desire to appeal to the U.S. market or to generate more American users. *Id*. at *7-8 (internal citation omitted). Notably, the court's discussion of the second and third prongs of

---

[2] The Ninth Circuit did not address whether AMA satisfied the second and third prong of the due-process inquiry because AMA failed to meet its burden on the first prong. *AMA Multimedia, LLC*, 2020 WL 4745032, at *9 n.9. Similarly, the Court only discusses the first prong of the due-process inquiry because the Court believes Plaintiff will not be able to show Madon purposefully directed his acts towards the United States.

7

the effects test only concerns the ePorner website's audience focus as well as its operational and advertising structure. Because AMA failed to show that Wanat purposefully directed his acts towards the United States, the Ninth Circuit affirmed the Arizona district court's dismissal for lack of personal jurisdiction. *Id*. at *9.

Although the present personal jurisdiction issue over Madon concerns a different party, it is substantively identical to the issue of personal jurisdiction over Wanat. Just as in the prior litigation, satisfaction of two of three requirements of the federal long-arm statute necessary to invoke personal jurisdiction is undisputed because AMA's claims against Madon arise under federal law, and Madon is not subject to the personal jurisdiction of any state court of general jurisdiction. ECF No. 12 at 1-2. Therefore, the only jurisdictional issue that must be determined is whether personal jurisdiction over Madon comports with due process. Applying the effects test, it is true that Madon intentionally acted as one of two partners of MW Media. ECF No. 33 at 3; *see also AMA Multimedia, LLC*, 2020 WL 4745032, at *6. However, the other two prongs of the effects test are the same whether applied to Wanat or Madon because, as the Ninth Circuit found, the United States is not the focal point of the ePorner website, nor of the harm suffered. *Id*. at *9. In other words, the ePorner website's lack of forum-specific focus is identical as to Madon and Wanat. Because the outstanding personal jurisdiction issue over Madon implicates the same analysis as the issue alleged, actually litigated, and necessarily determined in prior litigation, Defendant's collateral estoppel defense has merit.

c.   Statute of limitations

Fed. R. Civ. P. 15(c)(1)(B) provides that an amendment changing or naming a party against whom a claim is asserted relates back to the date of the original pleading when the amended claim arises "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Additionally, "the party to be brought in by amendment" must have received "within the period provided by Rule 4(m) for serving the summons and complaint . . . such notice of the action that it will not be prejudiced in defending on the merits; and . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

Defendant presents a potentially meritorious statute of limitations defense. Madon maintains "most, if not all, of AMA's infringement claims concerning the period before December 2015 . . . will be barred by the three-year statute of limitations contained in 17 U.S.C. § 507[(b)]." ECF No. 33 at 11. While it is true that AMA timely initiated the Nevada Action against MW Media in December 2017, before the statute of limitations ran with respect to that defendant (ECF No. 1), AMA did not file its Amended Complaint naming Madon until May 2019. ECF No. 12. Although AMA's original Complaint and Amended Complaint plead identical claims arising out of the same alleged intellectual property violations (*compare* ECF No. 1 *with* ECF No. 12), Plaintiff "failed to serve its [original Complaint] on any party and, thus, [Madon] did not know and had no reason to know he was being sued." *Cooley v. Leung*, Case No.: 2:10-cv-1138-RLH-RJJ, 2012 WL 13049554, at *2 (D. Nev. Nov. 26, 2012). Moreover, AMA does not demonstrate that Madon would have been sued but for a mistake in identification. Plaintiff's Arizona Action included Madon who was ultimately dismissed due to a lack of service. However, when Plaintiff filed the Nevada Action, it clearly chose not to include Madon in its original Complaint. Thus, Madon carries his minimal burden in alleging sufficient facts, if true, that would constitute a statute of limitations defense as Plaintiff may fail to demonstrate relation back of its Amended Complaint—filed more than three years after December 2015—is proper under Rule 15(c). *Mesle*, 615 F.3d at 1094.

### d. Lack of personal jurisdiction

Defendant presents a meritorious personal jurisdiction defense:

> Similarly to Wanat, Madon is a citizen and a resident of Poland. . . . He did not register the internet domain <eporner.com> . . . ; he did not post any infringing material described in the Plaintiff's complaint on the eporner.com website . . . ; he did not know that any of the allegedly infringing material described in the Plaintiff's complaint belonged to the Plaintiff . . . ; and he does not have, own, or control any tangible assets or real property in the United States . . . . Madon does not own or control any bank accounts or other similar assets that are located in the United States. . . . He does not sell or advertise goods or services to any person or company located in the United States . . . ; he does not and has never paid taxes in the United States . . . ; he does not do any business in the United States and has no officers, manufacturing, or distribution facilities, no employees, directors, or agents in the United States (except for the present counsel and a DMCA agent that was hired by MW Media after the [Arizona] Action was filed) . . . ; and[,] he has no representatives in the United States and holds no licenses in the United States . . . . Madon did not derive any profit from any of his activities in the United States, as he conducts no such activities here, and he does not specifically target any services to residents of the United States. . . . Madon has also never visited the United

>  States and has never applied for a U.S. visa. . . . Madon's role in the operation of MW Media and <eporner.com> is even more limited than that of Wanat because [Madon] is only responsible for the administrative aspect of the operations.

ECF No. 33 at 9 (internal citations omitted).

AMA counters Madon's argument by emphasizing that Defendant supports his claims solely with his own declaration and, therefore, the Court should disregard his statements. ECF No. 34 at 9-10. However, Madon's burden is minimal: "the question whether the factual allegation[s are] true is not to be determined by the court when it decides the motion to set aside the default. . . . Rather, that question would be the subject of the later litigation." *Mesle*, 615 F.3d at 1094 (internal citations and quotation marks omitted). Considering the above, Madon presents a potentially meritorious personal jurisdiction defense.

> iii. *Defendant did not act culpably in failing to respond to Plaintiff's Amended Complaint.*

"A defendant's motion to set aside a default should not be granted if the defendant exhibited some degree of culpable conduct in failing to respond to pleadings." *Aristocrat Techs., Inc.*, 642 F. Supp. 2d at 1234 (internal citation and quotation marks omitted). A "defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Grp. Life Ins. Plan*, 244 F.3d at 697 (internal alteration and citations omitted). In order for a failure to answer to be intentional, "the movant must have acted with bad faith." *Mesle*, 615 F.3d at 1092. For example, a bad faith failure to respond can be found where a defendant provides the opposing party with an incorrect address and thereby precludes normal service of process. *TCI Grp. Life Ins. Plan*, 244 F.3d at 698-99.

Defendant argues he did not act culpably in failing to respond to Plaintiff's Amended Complaint:

>  The only reason [Madon] did not respond to the complaint is because he simply was not properly served, and did not have either constructive or actual notice of the present lawsuit until March 2020, when his current counsel learned about the lawsuit during the course of a different proceeding before the Ninth Circuit Court of Appeals. Although AMA claims that it served Madon at his residence, the address indicated in the proof of service is not his residence, and the person who received the summons, Zbigniew Halat, is not a member of Madon's household. Also, to further indicate the lack of culpable conduct, as soon as Madon learned

about this case, he retained counsel and voluntarily reached out to the Plaintiff in order to address this action.

about this case, he retained counsel and voluntarily reached out to the Plaintiff in order to address this action.

ECF No. 33 at 8. In opposition, AMA claims Madon had actual knowledge of this lawsuit because existence of the Nevada Action:

> was disclosed to [Madon's] business partner and his lawyer over two years ago in the Ninth Circuit Mediation Questionnaire . . . , and [Madon] was aware that his business partner had been sued in Arizona federal court. . . . Moreover, his attorney admitted via email that he had been monitoring the case, that he had solicited Madon to be his client, and that Madon did not desire to retain him until after the default had been entered.

ECF No. 34 at 6. Plaintiff also maintains Madon had constructive knowledge of the Nevada Action because a "Polish court served Mr. Madon at the address [he] provided to the Polish Central Registration and Information on Business ('CEIDG')" in 2012, which remains listed online as the location where he conducts business to date. *Id*. at 4; *see also* ECF No. 34-4. AMA asks the Court to compare the address Defendant provided to the CEIDG with the address at which Madon declares he no longer resides in support of his Motion. ECF No. 34 at 7 n.2; *compare* ECF No. 34-4 at 3, 6 *with* ECF No. 33-1 at ¶ 5. Based on these representations, AMA asserts Madon deliberately provided a false address to avoid service of process. ECF No. 34 at 10. In reply, Madon contends he stopped conducting business activities at the address he provided to CEIDG in 2013 and simply failed to update the information in the system. ECF No. 36 at 3-4.

      The Court finds there is insufficient evidence upon which to conclude Madon acted culpably in failing to respond to Plaintiff's Amended Complaint. It is true that Madon's attorney—who was only Wanat's lawyer at the time of the Ninth Circuit Mediation Questionnaire's filing—could have paid closer attention to the questionnaire's contents. In fact, defense counsel attributes his unfamiliarity with the Nevada Action to "oversight or lack of memory[.]" *Id*. at 2. However, imputing counsel's oversight or bad memory to Madon, an individual who defense counsel was not representing in the Arizona Action, goes a step too far. *In re Perle*, 725 F.3d 1023, 1028 (9th Cir. 2013) (finding the plaintiff "has identified no case, nor [was the Ninth Circuit] able to find one, that imputes to a client knowledge that his lawyer gained while representing a different client.") (internal alteration omitted). The Court also finds that Madon's knowledge of the Arizona Action does not

11

bestow upon him actual or constructive knowledge of a separately initiated action in a different federal court in a different state.  Moreover, it makes little sense that Madon provided a false address to the CEIDG in 2012 to avert service of process attempted in cases filed three years later (the Arizona Action) and five years later (the Nevada Action), respectively.

In any event, Defendant's failure to respond did not allow him to "take advantage" of the opposing party or "manipulate the legal process." *Mesle*, 615 F.3d at 1093 (internal quotation marks omitted).  "On the contrary, the only outcome that such a failure could have earned Defendant was what [he] received: an entry of default and a heightened possibility of default judgment in favor of Plaintiff."  *Chrome Hearts, LLC v. Boutique Talulah*, No. 2:12-cv-00280-MMD-RJJ, 2012 WL 4510692, at *3 (D. Nev. Sept. 28, 2012).  Further, defense counsel emailed Plaintiff's attorney in hopes of stipulating to setting aside the default as soon as he was retained and received notice of entry of default.  ECF No. 33-7; *see also Mesle*, 615 F.3d at 1092 (setting aside an entry of default where movant hired a lawyer and responded as soon as he received notice of the entry of default). It was nearly two months later before Plaintiff declined the offer.  ECF No. 33-8.  Twelve days later, Defendant filed the present Motion.  ECF No. 33.

Because Defendant's efforts demonstrate that he did not intend "to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process," the Court finds Defendant did not engage in culpable conduct.  *TCI Grp. Life Ins. Plan*, 244 F.3d at 697.

### 2. The *Falk* Factors Weigh in Favor of Setting Aside Entry of Default

All three *Falk* factors weigh in favor of setting aside the entry of default.  Plaintiff will not be prejudiced if the entry of default is set aside, Defendant raises at least one meritorious defense, and Defendant did not engage in culpable conduct.  For these reasons, the Court finds that declining to set aside the default would be contrary to the Ninth Circuit's long held policy in favor of deciding cases on the merits whenever reasonably possible.  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016).

### III.     ORDER

Accordingly,

IT IS HEREBY ORDERED that Defendant Maciej Madon's Motion to Set Aside Default (ECF No. 33) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court's Entry of Default as to Defendant Maciej Madon (ECF No. 32) is VACATED.

IT IS FURTHER ORDERED that Defendant Maciej Madon shall have **fourteen (14) court days** from the date of this Order to answer or otherwise respond to Plaintiff's Amended Complaint (ECF No. 12).

IT IS FURTHER ORDERED that Defendant Maciej Madon's request for judicial notice of ECF Nos. 33-3, 33-4, 33-5, and 33-6 is GRANTED.

DATED THIS 28th day of August, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE